on behalf of the Apple Orange Colossal Tide, on behalf of the Calum Cross Appalachians and Philip J. Piscopo, on behalf of the Appalachian Cross Apple Orange, this is your match to be shot. Thank you. Mr. Piscopo, you may proceed. May it please the Court and Counsel, this case is about the review of maintenance. Maintenance is designed to enable a spouse to enjoy a standard of living commensurate with what he or she had during the marriage and to allow that spouse time to become financially independent. In this case, Judith Brunke, the recipient of the maintenance, received $1.2 million and five years of maintenance in the original divorce in 2012, and those five years of maintenance were for $3,000 a month, holding $180,000. The record shows that Judith has not depleted any of those assets, despite her pleas to the contrator in her briefs, and in fact, her assets have increased to $1.4 million between the time of the divorce and the time of the trial. And yet, Judith wants to not only continue the maintenance, essentially, for the rest of her life, her indefinite maintenance, but also to triple its amount, simply because John is making more money today. That's not what review is all about, and that's not what a substantial change in circumstances is all about. The purpose of review is to see if she made an effort to become more financially independent. Well, but the marital settlement agreement didn't say anything about the type of maintenance that was awarded. I mean, it didn't say this is rehabilitative maintenance, correct? Well, there was a mention of rehabilitative in the prove-up, in the prove-up hearing at the very beginning. Well, I think it was he testified to that. Correct. Right. But there was nothing in writing in the marital settlement agreement, which was then incorporated in the judgment of dissolution, so. It doesn't explicitly say that. However, the maintenance was made reviewable. And under the law, under the Blum case and a lot of the cases construing it, really all maintenance awards are designed to become financially independent. And when it's reviewable, that's even more so. Right. Well, she was 62 at the time of the divorce. Isn't that correct? Yes, Judge. And wasn't it foreseeable to really both of them, that is, John and Judith, that she would not be able to earn income commensurate with the standard of living that she enjoyed during the marriage? Well, as far as employment is concerned, perhaps. Right. I mean, recall she was 62, which, I mean, is not 25, but a lot of people, especially in the intellectual professions, like teaching law, doctors, things like that, they often do their best work at their 60s, so. Well, but they have had a career. I mean, she never got her license and never really was teaching at that point. I mean, I believe she was a counselor, et cetera. But that's very different. I mean, she did go out and get a job at Target, but obviously that's a different type of job. Well, perhaps that sounds all right in the abstract, but in the case of the record before us, we have virtually no efforts whatsoever to even try. Well, was she licensed in Illinois to teach? She was not licensed in Illinois. And to be licensed in Illinois to teach, she would have to get additional education, correct? I don't think it's necessarily additional education. She did testify that she had to do some student teaching for a couple of years. Well, I thought she needed three years of some sort of education, according to the record. Some sort of that, yes. Well, you're not 62, I don't believe. No. And going back to school at 62, was it required? Was it ordered? It was not ordered specifically that she go back to school. Was it suggested anywhere in the marital settlement agreement? No, it was not. And even though he may have said on the prove-up that he considered this rehabilitative, was she even present at the prove-up? I believe she was not. Okay. So how would she know that? How would she know? Well. From anything written that she received or anything? By the fact that it's reviewable in five years. That just says it's reviewable in five years. It doesn't say for what. If she were that concerned that she was unemployable or unable to earn a living, then she wouldn't have made it reviewable in the first place. But beyond that, although she testified that it would be difficult to return to student teaching, that doesn't mean that she can't do anything. Well, she did get a job at Target, as we had said. She eventually got a job at Target just a few months before it was time for her to file the petition. Right. Now, you talked about the assets that she did have. But does the law require that a former wife deplete those assets in order to maintain the standard of living that the parties enjoyed during the marriage? Actually, in a sense, it does. And what case are you referring to or what authority? I'm referring to the statute, the factors in determining maintenance include. We're referring to 504? 504. Okay. 504A1, which requires the courts to consider the income and property of each party, including marital property apportioned and non-marital property, assigned to the parties seeking maintenance, as well as the financial obligations. So the maintenance award contemplates that it's not only income but also the marital property and the non-marital property that the spouse receives. That's not supposed to just stay in a box that she doesn't have to touch for the rest of her life and thereby require the other spouse to support her. That's contrary to the notion of maintenance, which is to get the parties to be separated from each other and unentangled from each other financially. Other than Social Security, does she have, as a result of the marital settlement agreement, any interest in his pension? She does. They split his, I believe it's called the A fund, where, and she's actually getting that now because, oh, wait, no, I'm sorry. No, she's not getting that now. She got an annuity. She got an annuity in the divorce that she's receiving money on now, and they also split a pension that, you know what? Did he fund, I'm curious, did he fund, he probably funded that annuity in lieu of a part of his pension? This isn't really quite clear from the record, but my knowledge of this is that when American Airlines went bankrupt in 2011, his pension was converted into this annuity, and so that's all that's left. Well, she's, so my point, though, in asking these questions is she's going to have to live on something in addition to Social Security if her life exceeds where it is now, and isn't that what her property and income from that property would be for? Yes, yes, and the major component of that. So it's not just sitting in a box doing nothing. It's going to support her at some point in time. And it's intended to do that. But why does it have to support her now? Why does it have to support her now? Well, because she's at the appropriate retirement age where it does support her now, and one of the S's that she received. But he hasn't yet is the issue. Well, it's... Maybe now he has, but then he hasn't. Well, he's 59 and she's 68, and I was a bit mistaken on that. She is receiving her share of that annuity right now because of her age. He is not receiving that share because he's too young to receive it, but she is receiving it. I think it's about $1,700 a month. But in addition to that, she received an IRA worth almost $500,000. And throughout, since she was 62 at the time of the divorce, she could have taken it at that time without any penalty. She did not take any of her IRA. That's still sitting there and still growing, and it's, in fact, increased in value to $636,000. So she has a $636,000 IRA sitting there. And when I was doing my briefs, I ran through. I just imagined, like, let's say it earns no money ever for the rest of its existence, which is unrealistic. It's going to earn something. But even if it earns nothing, she can take $3,000 a month out of that IRA instead of receiving maintenance, and it would last her for 20 years. But now, is it your position that maintenance should have terminated? Yes, Your Honor. But now, where we did not find a copy of a motion to terminate maintenance in this court file, in this record. Is there one that was filed? It was in his response to the motion for her petition for review. So it was incorporated in the response to her petition for the review. Correct. So that is where you put your request to terminate maintenance as opposed to filing a different specific motion. Is that right? Right. Well, there was a different motion that was filed in October of 2017 asking to terminate maintenance for a completely different reason. Well, there were motions to abate earlier. There were motions to abate. But we're not talking about those. Well, I did appeal those as well. Right, I know. But I meant right this minute. Right. But it was the response. Because that's what review is all about, determining if maintenance is going to be continued. And she contended that it would. So it's your contention that somewhere in this record there is a formal motion to terminate? Yes. Yeah. And when was it filed? I'll have to drop that and see. Well, maybe in between this argument and your reply, you can check rather than using this valuable time for arguments. It's in the appendix in A54 and 57. Okay. Thank you. But that's our response to the petition. She wants to extend it. He doesn't. And so that's where the parties became an issue in the matter. So this doesn't get until page 26 of your brief that you mention the standard of review, I believe, which is an abuse of discretion on review of the proceedings. And I don't think during your argument I've heard the word discretion, let alone abuse of discretion. I've heard arguments that relate to the idea that you conclude, for example, that she could have taken $3,000 a month out of her IRA, and that would have covered the loss for the terminated, non-extended maintenance payments. Right. I would like to hear why you think that the trial court's refusal to not extend the maintenance was an abuse of discretion, because when you made the argument about taking it out here in order to alleviate the or to remediate the loss of the maintenance, that may be a rational argument, that may be reasonable, but it doesn't necessarily make the trial court's extension of maintenance an abuse of discretion. Okay. I can answer that for you. First of all, it abuses discretion in two ways, and one of those is the trial court actually made a specific finding that Judith has done little if anything to make herself any more employable than she was at the time of the divorce. They actually made that specific finding, and I think its finding on that was correct. There was a lot of, there was virtually no efforts of her to make herself employable at any time, and the trial court found that, and yet despite the case law providing that if you failed to do those things, maintenance could well be terminated, the trial court just blew past that and didn't take that into account in the correct manner, and that itself was an abuse of discretion. And second, the evidence was clear that she has $1.4 million in assets, and somebody with $1.4 million in assets simply doesn't need maintenance, and by failing to take that into account, the trial court abuses discretion in that way, too, because its decision is contrary to the purpose of maintenance, which is to make the spouses financially independent, and by ordering what the trial court did, he ties the parties together for longer than what even was originally contemplated. By failing to take into account the fact that she failed to do anything to get a job, and even without that, she still has sufficient financial resources to sustain her for decades to come. In the Cantrell case, the court found that it was an abuse of discretion not to terminate maintenance, but we don't know how old the wife was in Cantrell, do we? Funny you should say that, because I was looking at the Cantrell case while preparing for this argument, and it doesn't Did you find anything in there? I didn't find anything in there that said what her specific age was. Correct. It did, however, state that all her children were emancipated by that point. Well, but we don't know. Somebody in her 40s? Well, we don't know. It could have been someone in her 40s, 50s, 60s. If she wasn't in her 60s, I think that would be a pretty important distinguishing factor for us with respect to looking at Cantrell. Yeah, it didn't say her age, but it did have enough other indicators to show that she wasn't in her 20s or 30s, and plus she had to go back to school to get her degree that her ex-husband had paid for. So there were a number of years that had gone by. And a number of differences than we have here. I mean, here there was no requirement that her husband didn't pay for her to go back to school, obviously. We've just talked about that. Right, but she already had a master's degree, and although she claimed that it was useless, there's nothing indicating that she couldn't have gone back to work for colleges as an admissions counselor. Maybe she couldn't go into teaching. Maybe that would be difficult for her. Maybe it wouldn't be, but there's nothing indicating that she could not go back to work as an admissions counselor. I mean, when you have a master's degree, I mean, that's a scholarly field. So she should have good research writing skills that could probably play well in any aspect, but she never even tried. She wanted the trial court and now this court to say that I can't get a job because I'm 68, but there's nothing in the record showing that she tried. And that's where this case is like tantrum, and that's why we believe that the trial court's decision was an abuse of discretion and should be reversed. You, in your conclusion, suggest that we should reverse and order the trial court to terminate the maintenance. Your prayer doesn't ask that it be remanded and the trial court consider a reduction in the amount of maintenance. Is there some reason why you didn't ask for alternative relief? Well, our client believes it should be terminated. If you, your honors, believe that a reduction in maintenance would be appropriate, then we can certainly go for that. No, we don't grant relief that isn't requested. I understand that. And, no, we did not request it because we believe that maintenance should be terminated altogether. So your point, my point is, in a roundabout way, it's not your contention that it should have been reduced to $2,000 or $1,000 a month or $1,500. It's your contention that it should have been not extended at all.  Thank you. Thank you. You'll have an opportunity to make your point. Yes, Mr. Shaw, you may proceed. Good morning, Justices. Matt Shaw on behalf of Judy Berlke. As the Court knows, we filed a petition for review of maintenance as well as a petition to modify maintenance. The Court made a ruling, and that ruling, the Court extended the maintenance, omitted making any finding whether a substantial change of circumstances occurred, and ordered the same amount of maintenance. To briefly rebut... On what issue, on which of your two requests, would it have considered the substantial change in circumstance? The petition to modify it. All right. In response to opposing counsel's argument about the purpose of maintenance and rehabilitation, I think just a few quotes from cases may be helpful, but I would also go to my bigger picture that 801C holds that, or this Court in Carson holds that 801C applies, and to the extent that rehabilitative maintenance or the idea of rehabilitation still exists, it's in the factors as one factor. But looking at the cases that opposing counsel had cited or his arguments they made, the purpose, this is Selinger, the purpose of rehabilitative or time-limited maintenance was to provide an incentive, et cetera, but it is appropriate only where the spouse is employable at an income that would provide the approximate standard of living enjoyed during the marriage. More recently, in Raymarriage Harms, which was cited, 5th District, 2018, the recipient was 70 years old and had no job since 1997. There were no reasonable efforts at rehabilitation or no reason to believe that efforts at rehabilitation to become self-sufficient exist. Very similar to this case, which Ms. Brunke was 62. Although she had an old degree, she had not worked since 1992, so she had not worked during the past 20 years of the marriage. But now in your petition to review or extend maintenance, wasn't it alleged that she had made efforts to become self-sufficient? And in light of that, I mean, didn't she really concede that this was supposed to have been rehabilitative maintenance? I suppose there's some implication. I don't think it's explicit, Your Honor, that approximately two and a half years after the divorce, she did seek employment, to be candid with the court. I think that the setting of the maintenance was somewhat fictitious. She didn't fully participate. She's not at the prove-up. She testified that she was told this was the correct amount. I'm a little bit puzzled by saying it was fictitious. There was an attorney representing her. Well, maybe not. All right. Go ahead. You say fictitious, but yet she had notice of the hearing. Is that correct? And her husband had counsel and was an officer of the court, and I assume made representations on the record to the court with respect to that. Let me amend my word to probably artificially low, given the facts at the time. Okay. All right. And that the parties had approximately an equal distribution of property. It's hard to discern whether Mr. Brunke received more because there were a couple of funds that were not valued. But suffice it to say, Ms. Brunke received 50% or less of the property. Maintenance was said at reviewable, and that's as it was. She did seek employment and obtained employment two and a half years after the divorce. And she, again, not having a licensed degree in Illinois and not feeling like there was a prospect of beginning a licensed career in her mid-60s, sought whatever employment she could. She still works out of 15 seasonal employees hired by Target. She's the only one who has extended extra hours throughout the rest of the year. So she has made efforts. Well, but if she didn't, I mean, the first two years or so she traveled and she said that there was some sort of, she was emotionally drained by this divorce. She indicated she was doubt-smacked. Although, did she file for the divorce? Was she the petitioner in the divorce? I don't believe so, and what I base that on is that Mr. Brunke appeared at the prove-up, so he must have been the petitioner. Okay. So she was not, maybe didn't want the divorce, but it became inevitable. But if she didn't think she had to do anything to support herself, why then did she go out to look for a job? Well, again, I think she did the best she could. She knew she was living on a finite sum of money. She wasn't sure. I think she even testified, I believe, that at the time of the divorce, the airlines were not doing well, and something to the effect of, you know, this may be what I get and what if the airlines go under or what if he loses his job. So I think she was being prudent and doing the best she could for a person of her age and station. There's some, she testified, I think, that she had to use some of her property, but yet there seems to be a disagreement that she used any of her property. What did she use her money for? Well, I think that the— Or her property for, rather. To pay real estate bills, and some of it was to pay Mr. Brunke a sum of money that's not contained within the marital settlement agreement, but was sort of an oral agreement after the divorce. Sort of had some oral agreements to kind of reimburse him from her mother's inheritance for money he had spent on her son's education. Opposing counsel cites or alleges that her income is high, and among the elements of that they cite the fact that she cashed in some retirement funds. So I don't think it's in question that she did so, and I think she's trying to do it to maintain her lifestyle. I think she's depleting assets to do so. You said there was a finite amount of funds. I don't know that that necessarily implies that the funds will over time diminish as the expenses of life accrue, but I thought that what I read was that she actually has more finite funds now than she did when the divorce took place. Without doing any accounting, I think the parties disputed what she had, and I think there was tremendous market growth recently, but that she had also made withdrawals from those funds. If we were to apply the guidelines here, how can we use John's current salary to establish the amount of maintenance instead of the salary that he was earning at the time of the divorce? Well, I'd like to answer by saying because those are the guidelines now in effect, and under Carstens, Carstens, of course, had held that 801C applies to proceedings filed after January 1, 2016, as in this. So I think the court would have a two-step process to determine whether maintenance is appropriate, to then apply the guidelines, which would be approximately $8,500 per month, and then to determine, I think under B2, if it wanted to make specific findings to deviate. But to answer Your Honor's question more philosophically, I think that at the time of the divorce, she was not receiving a sum of maintenance that was commensurate with their standard of living. And so I understand that now Mr. Brunke might want to argue, should this case be remanded, that, oh, my standard of living or my income has doubled, why would she get a benefit to that? And I don't think it's that she's going to join him in his current standard of living. I think that if the maintenance is set at the correct amount, I think it actually would be commensurate with the lifestyle needs of the parties during the marriage. Well, okay. Now you referred to Carstens, but Carstens was a modification proceeding. That's correct. Earlier you acknowledged this was a review proceeding. Yes, Your Honor. They are different, are they not? They are, but I do have a case that I think will clarify that it also applies to review, and that is Kasperzyk, K-A-S-P-R-Z-Y-K. That is a Fourth District case, number 4-17-0838, opinion filed in April of 2019, followed this court in Carstens and ruled that 801C applies to review hearings as well. Right, but have you looked at In Re, the Marriage of Golden, a Second District case where we specifically held that there is a difference between a review proceeding and a modification proceeding? Judge Coppola was the author of that decision. So why should we look outside of our district when we have a case which is golden, a 2005 case, albeit exactly on point? Because there's been a legislative change, is my answer, because 801C said this applies to proceedings filed subsequent to January 1, 2016, and I don't think that Golden Controls says that 801C will not apply to a petition for review now. I think it's a legislative change that's clarified that and stated it directly. You said proceedings filed, did you not? Yes, I believe the petition – well, I – go ahead. That normally means that when the dissolution proceedings are commenced, that that is what it means when it says filed after a certain date. It doesn't mean that it retroactively applies to cases that were the initial or the opening pleadings were filed prior to the effective date of the statute. Do you have any citation to suggest that what I've suggested is wrong? Because that's my understanding. I want to make sure that I understand it. So as I begin to answer the question, please tell me if I'm not following that. Okay. Under the Cole case – I'm sorry, which case? Cole, C-O-L-E. Yes. Fifth District, 2016, the facts are such that the hearing took place in 2014 and the court didn't enter a judgment until 2015, so the statute that went into effect on January 1, 2015, did not apply. So I think that is correct. I think that in petitions to modify or establish or petitions adjudicating or seeking a modification of maintenance or child support, if they were filed after January 1, 2016, and I know I mixed that up because I know it was only to maintenance here, then I believe that new maintenance statutes apply. And I think that's what Bennett – – citing to authority as to that specific issue. I believe Bennett does. You think Casper says that? Casper? The case you cited in the Fourth District. Casper's Act. Oh, yes. I believe that that followed Carson's rule that 801C applies to hearings for review. In that case, the petition to extend maintenance was filed on October 26, 2016. There was a hearing in 2017, and in order to extend maintenance also in 2017. So I do believe it says that. Right. But let me go back to C. I'm looking at the right provision here. It says this Act applies to all proceedings commenced after its effective date for the modification of judgment. That is different. That's a term of art, is it not? That's different than review. So when you say the statute changed, that certainly on its face, that provision applies to modification proceedings. So here we're looking at review proceedings. So I go back again to the applicability, at least as I currently see it, of Golden, which makes a distinction. So I don't know how the change would affect that. May I respond also by Casper? Is that how you say it? That indicated or stated that based upon our reading of 801C, in the context of the Dissolution Act, we conclude that the legislature did not intend the language, as just read by Your Honor, to mean only modification proceedings. So that's their interpretation. I understand. Did it say what it thought it meant? Because that's a negative pregnant. It said it applies to proceedings to terminate maintenance, modify maintenance, and review maintenance in all three. The Dissolution Act directs the factors in 504A, 510A-5 are to be considered. Each of these seek a modification to the original order. The only difference between the types of proceeding is the basis for the trial court's authority to modify. In review proceedings, the court provided authority to revisit the order, whereas in termination or modification, the legislature provides authority so long as there's been a substantial change of circumstances. They cite Keasley from the 2nd District, H-E-A-S-L-E-Y-2014-L-F-2-1-3-0-9-3-7, and say, we fail to see how this difference prevents the application of 801C to review proceedings. Who wrote that, do you know? I saw Justice Connacht on it, opinion by Connacht. Thank you. And I don't have a copy of Golden. Last time I read Golden, I was reading Rice, Rodriguez, and Golden and trying to determine the jurisdiction for the court to proceed on review proceedings. So I don't know without specifically looking at that language how to respond more specifically than to cite the current legislation and the cases interpreting that current legislation. There's a tense-up called concurrent jurisdiction, and I'm curious, do you believe that in a situation like this case, the trial court can be adjudicating or presiding over a review hearing as well as a modification hearing? Yes. And if so, how does the proceedings ensue insofar as the elements of proof are different, are they not? I think that the major difference is with the ‑‑ I think they'll look at the same factors under 510A-5 and 504, but I think in the review hearing, the court will have to determine whether or not maintenance is appropriate to proceed to the guidelines. I think in the modification proceeding, it's imperative that the court first determine whether there has been a substantial change of circumstances. Well, wouldn't you agree that in a review, the respondent doesn't have to present any evidence other than the reputation of the evidence presented by the petitioner? I'm not sure I understand it. Do you mean that we have a burden of proof to prove that she doesn't need it? Well, there's a subtle difference between suggesting to the trial court that it not extend maintenance any further. It's another thing to argue that she's remarried, and therefore it should terminate based upon the modification brought about by a precipitous event. Right. Now, if it's a review and the argument is made, Judge, she's married, does that then turn this into a modification proceeding or is this still a review proceeding? At the beginning of that, it's a termination under 510C. You didn't answer my question. Is it a review or is it a modification? I guess a termination would be considered a modification proceeding. And in the statutory authority, modification and termination, that language is together, whereas review is separate and apart. Right. But the same factors apply, and I would like, if I may, to try to finish answering this question, is that in the review proceeding, I think it's incumbent upon the movement to show that maintenance is still appropriate and then to proceed to the guidelines. I think in the modification, they have to show that there's been a substantial change in circumstances and that maintenance is appropriate. Well, then why wouldn't the movement have to prove that they aren't married or that they're not cohabiting in order to continue the maintenance? If it's the burden on the movement to extend maintenance, don't they have to prove or disprove all the negative elements that normally, since you don't have to prove a negative, would be placed on the respondent's table? I do think under the new statute, if the recipient were married, they're under duty to notify the payor of that. So, yes, to that extent. But if they're not remarried, I don't think they have to prove it at the hearing for review. Counsel, so if you don't believe that there's a difference between the review and modification proceedings and that the guidelines apply to both of them, what was the purpose of your filing a separate petition to increase maintenance in which you alleged a substantial change in circumstances? I do think there's a difference in the petitions because I think in a petition to modify, we must allege and show a substantial change of circumstances and that maintenance is appropriate. If we thought that the $3,000 per month were the exact correct figure, hypothetically speaking, let's say it's right on guidelines, perhaps we would have filed only a petition to review and extend the maintenance. But it's not. So you don't think the court would have had the power just on a review proceeding to increase the amount of maintenance? Oh, that's a good point. I think they would have. Right. I think they would. I mean, is there anything that would prevent a court from doing that? I don't think there is. Well, so did you have a different view of what the law was when you filed this separate petition? Well, perhaps I thought that we better file both the review and the modification to make it clear that we were stating a case for modification and requesting that. But now that we've studied this in detail, perhaps the court could have done that with only a review. If it were in our prayer for relief. Pardon? If it were in our prayer for relief. Any other questions? No, thank you. Thank you, sir. You'll have an opportunity to make, I think it's a server model. Yes, I think so. Thank you very much. Yes. Mr. Piscopo, you may proceed. Yes. Hello again. In response to the cross-appeal, there was a substantial colloquy about AO1C and the application of the guidelines. I would submit that even beyond that colloquy, in review proceedings, Section 504B-8 provides an additional reason why the guidelines don't have to be applied. And that's what Judith has been arguing, is that you have to apply these guidelines no matter what. That's just not the law. In Section 504B-8. Well, how do you distinguish the Kaspersiak case? Pardon me? Kaspersiak. Kaspersiak. So how do you distinguish the Kaspersiak case? Counsel argued we should follow that case, which indicates that review proceedings and modification proceedings shouldn't be treated any differently as far as application of the guidelines. Well, because the Kaspersiak case didn't address the factor of Section 504B-8, which was enacted later. I don't know if it was after Kaspersiak. In fact, I think it was Kaspersiak. I think that was the case that said that this was enacted after we did our, after the trial in this case. But 504B-8 clarified the law to say that on review, the trial court can keep maintenance the way it is. It can extend it for particular times. It can make it indefinite. It can terminate it. It has discretion to do what it finds appropriate. And so if the trial court finds that, like in this case, that $3,000 a month is appropriate, it doesn't have to go to the guidelines. If it finds that no change is necessary, it can stick there and doesn't have to automatically go to the guidelines to, in effect, triple Mr. Parker's maintenance obligation six years after it was made just because there are new guidelines. And with regard to substantial change in circumstances, yes. You're saying that the trial court has discretion, despite the fact that the legislature supposedly wants to impose a provision that would remove the trial court's discretion from the inherent aspect of a review proceeding? I don't think the legislature did intend to remove the inherent discretion in a review proceeding. That's what subsection D is all about. But if a trial court were required to apply the guidelines, would it not then be implied that the legislature was attempting to impose a guideline on a judge who supposedly during review has the discretion to decide to leave it as it is? You're suggesting that the enactment of the guidelines removed that discretion? Well, if supposedly the guidelines have to be imposed, then does that then mean that his discretion to leave the status quo ante, in effect, is no longer the law and he can't do it, and therefore it's imposed its own exercise of statutory discretion on a judge who during review thought that it should be $3,000 a month but now is told it should be $8,000 a month based upon the mandatory application of the guidelines from the statute? That's your question reflects why it's wrong to conclude that the legislature meant to take that discretion away. And I don't have the legislative history. Well, I don't know that it proves that it's wrong so much as it proves that there's a contradiction. It's an apparent contradiction, but it was resolved by the enactment of B-8. And while I don't have the legislative history, I imagine it was put in for that very reason, because it was believed that it would require the trial court to junk the old order just because there's a review pending, and so the legislature provided in Section 3-8 that the trial court retains the discretion that the trial does always have in review proceedings to either leave maintenance the way it is or increase it or decrease it or extend it or whatever. B-8 clarified the law to make sure that that was the case. And so the horribles that your question implied has been removed by the legislature if it ever existed at all. Well, did the legislature intend that the guidelines be imposed in such a way that based upon an increased standard of living in the opposing spouse should be factored in and applied such that the standard of living presently should be enhanced to the level of the standard of living of the divorced spouse? No, I don't believe that the guidelines say that at all, partly because of B-8 and partly because of the factor of, I believe it's B-1, where it says that the trial court does not find that the same guidelines should apply for whatever reason And it's certainly never intended to contradict the longstanding law everywhere in the State that the spouse should have as close as possible the standard of living that he or she enjoyed during the marriage, not a higher standard of living, which is what Judith is asking for now in asking the court to triple her maintenance obligation. And insofar as the filing of the proceedings, do you agree that it relates to the filing of the particular petition or does it relate to the filing of the initial pleading that would ultimately result in a dissolution? Well, 810C does say petitions to modify. So if the statute went into effect prior to the petition to modify, then the new statute, but all of the new statute, would apply. So what Judith wants to do is take only the guidelines. She always wants to take that part of the new statute because that's the one that looks the best to her. She wants the court not to apply subsection B-8. She wants not to apply the discretion that judges continue to have. I think the phrase is she's disinclined to interpret the two statutes in paramaterial. Correct. That's what she's trying to do part of it and not the whole thing. And that's the part where I believe that she's mistaken. On the substantial change in circumstances side, the new guidelines also don't change that either. You still have to prove a substantial change in circumstances before you ever get around to even thinking about applying the guidelines for modification and maintenance. And in this case, she didn't do that at all. She doesn't cite anything that shows that the financial situation changed at any time between the time of the divorce and the time of the trial on the petition to modify and increase. Does the trial court's finding that her employability was such that it was not to be held against her, that she didn't find lucrative employment? I don't think the judge said that it can't be held against her. He said what the trial judge said was that she did little, if anything, to increase her employability. And while the trial court acknowledged that she probably can't get the same salary as John did, that still doesn't mean that she is exempt from trying her best to get reasonable employment. Well, what if she gets reasonable employment, but it still does not relate to the lifestyle that she had before? What if she does get a teaching job and a sub-job, even with her credentials, and makes $20,000 a year? That still isn't – I mean, did you establish anything in this record that she could make X amount of dollars as a teacher, substitute or otherwise, to get her to that point? Well, there's nothing in the record with regard to that. Well, you wanted to terminate it, so that's your burden. Well, on the review, as Justice Seno pointed out, it's their burden. It's she who wanted to maintain it and continue it. And incidentally, I did look at – while I was sitting, I looked and saw that what we asked for is that her petition to review extend maintenance be denied. And so that was where we wanted – that was where we asked the court to terminate maintenance altogether. So not by an independent petition? Correct. It was just in the form of our response. But it is her burden to go ahead and show that she made efforts, that she tried and she got decent appointment, but it's still not enough. So under the scenario that you envisioned, then we would have a record and she would have met her burden to show what she is trying to do in order to get her – in order to get her – So what salary was she going to have to make to maintain this lifestyle in your scenario? It really wouldn't – it really wouldn't take a lot because under the – under the tax analysis with the maintenance, she was – she had income of approximately $59,000. So basically, if you take – if she gets a job that pays her at least $3,000 a month, then that would be an effective substitute. If she tried harder but was unable to get something, then there might be a basis to extend maintenance for some amount, maybe less than the $3,000, but for some amount. But we don't have that. Didn't the trial court say that upon his retirement, your client's retirement, that maintenance is terminated? Yes, Your Honor. The trial court did say that. Or expires? Yeah. Thank you. Thank you, Your Honor. Any other questions? No. Thank you. Mr. Shaw. Thank you. You may proceed. Judge, one other point that I think might be persuasive is in some of the cases, such as In re Marriage Connors, Second District, 1999, the trial court erred in applying the law of the case doctrine, where the case had not actually been appealed and there was actually no law of the case. And I've read this in two or three other cases, and I think we see it in the instant case where the trial judge says, Well, it was $3,000 a month in the marital settlement agreement. Maybe I'd better stick with that. I think it would be a remote possibility statistically that the court went through some analysis and arrived at the exact same figure. And I think in this case the court erred in not finding that there was a modification, not addressing it, really, and not applying the new statute. And even if the court wanted to deviate, let's presume that the court just intended to deviate and arrived at that number, then they didn't follow the statute in that they didn't do the analysis to show what the figure should have been and then make written findings for why there would have been a deviation. Well, did your client produce any evidence that she looked into the education necessary to be certified in Illinois to teach full-time and what that cost would be? My memory is she testified that as she looked into it, she was discouraged because of her age and what she was hearing and didn't think she could get in the field. I don't recall presenting any evidence as to the cost of obtaining the degree. Was there any evidence that she actually applied to a local school district or several local school districts under the existing circumstances to determine, which would be no education and be on a sublist? Was there any information like that presented to the trial court? I don't think we presented any exhibits. She may have testified that she looked into it and maybe not much more detail than that, but as the court aptly noted and was going to be one of my arguments, even if you said, wow, she went out there, she got a $30,000, $35,000-a-year job, well, it's maybe going to reduce that statutory guideline by about $500 per month and, again, it's within the court's discretion whether to apply that guideline or deviate. I don't think it would make a significant difference where Mr. Brunke, depending on which year and which figures you're using, is making $360,000 or $380,000. The court did not abuse its discretion in finding that maintenance is appropriate, and Mr. Brunke is well able to pay it. Well, but what the trial court said was that the marital settlement agreement, I believe, met the $3,000 a month met her needs at that time. I think that is what the marital settlement agreement said. Mr. Brunke's attorney drafted it. She did not draft it. I don't think it really met her needs. And by using the needs, they're ignoring the phrase lifestyle needs. I don't think there was an analysis done. I think it was just this is the figure they agreed to. There wasn't, but that was the agreement the parties reached. It was a marital settlement agreement. That's correct. So if we look at that and that met her needs at that time, we have to show or we have to see that either her needs increased and she could not handle that and or, well, it would be and he had an increase in his salary, which we know he did, and therefore we now have two significant changes in circumstances. What was, if you're looking at that for modification, what additional needs did she have? Did she develop health needs? She was noting $700 a month on her affidavit for travel, and travel seemed to be a rather significant amount of the prior lifestyle of these parties, probably because of the airline rules at the time that have changed, I guess, a little bit since then. But, I mean, so what needs are being met on the modification proceedings? Number one, even though that's what the marital settlement agreement said, I don't think it was meeting her needs, and I think that's evident from the fact that she depleted assets to try to meet her lifestyle. So I think when you say, well, what needs occurred, if I may say, I'd like to say life and expenses and real estate taxes and paying him back for her son's education. I think that the, I think respectfully, even though that is what the agreement says, I do think it was artificially low, and I think she didn't realize what her expenses would be, and I don't think she's been able to keep up with her lifestyle needs. Well, then did she present any evidence other than she used some of her property that was given to her to pay for these things and refute the fact that she did not have, it was not adequate to meet her needs? I believe she testified that she had cut back on certain things. I think they were pretty small things that she testified to. I think it's more that she no longer lived at the lifestyle that they had. Any other questions? Are there any other questions? I have one other question. Going back to 801C and the point that you made with respect to your feeling that Golden no longer was applicable. As I had pointed out, and as 801C reflects, the legislature used the word modification of a judgment. The legislature knew the difference and knew at that time, too, that there were two different types of proceedings, one being modification, the other being review. That certainly is reflected in the changes that were made in 510 because the court in A5, I'm sorry, the legislature in 510, A5, talks about not only modification but also in that section review proceedings. So to say that modification, I mean, the legislature, if they wanted to include, would have included review proceedings in modification, would have spelled it out, would have said modification and review, would they not? Perhaps they should have, but as I'm trying to visualize that page in my mind, I see the word modification by Section 510, and I think modification encompasses review. And I know that I don't mean to sound tautological in that, but I do believe that they use it, they encompass it in that manner. It might have been even better if they had really delineated each thing. But if I may, add modification, the court can terminate, extend, modify. As the Court aptly noted, the Court has a lot of discretion of what to do at a modification hearing, and we filed a petition for modification that I think wasn't properly addressed by the Court. Right. And one final point on what we've just been talking about. Regardless of whether the title had just modification in it, in A-5, the legislature does say it's in all proceedings. This is at the very end of that first paragraph before the enumeration of the factors. As well as in proceedings in which maintenance is being reviewed. Right. So, but again, delineating a difference here. Anyway. It's an interesting point. Okay. I have several questions. Your prayer for relief. Did you have a question? No. I'm sorry. Your prayer for relief asks this Court to find Mr. Brunke in civil contempt for lack of timely maintenance payments. Why are you asking this Court to make findings, and if we make findings, then supposedly we're supposed to punish him for contempt as well? That's a good point. I probably should have said to a man for a finding. We feel that we established the four elements of contempt. He has subsequently become current. It's not an active issue, but I do think it's a Section 508B issue. I think the Court should make a finding of indirect civil contempt. We're not asking for him to be punished, but we are asking for him to be assessed. You also ask that this Court, I quote, to apply the statutory duration of indefinite maintenance of respondent-appellant cross-appellee's maintenance obligation. That's what you're seeking? Correct. It was a 26-year marriage, and we believe that indefinite maintenance is appropriate. We believe that an automatic termination date is not appropriate, especially where he may seek further employment applying for a cargo airline or something like that. And you're saying this in part because, I believe I indicated earlier, that the trial court said that maintenance will terminate upon the husband's retirement? That's what the trial court said. So if we enter an order or disposition that doesn't grant you this relief that you're requesting, that would most likely establish res judicata in law of the case insofar as the unless, of course, maybe there's something that I don't know about, that the trial court's decision relating to retirement is now a firm, final, non-appealable judgment. I think if the court affirms that, then it would be the law of the case. But I think that the court abused its discretion in setting an automatic termination date where I think it should have been indefinite maintenance. And we don't know how much Mr. Brunke will earn after his official retirement because there are many other occupations that a retired pilot can earn significantly. And in light of Mr. Piscopo's statement in clarification of the request of Justice Enoff, your prayer is that the request for termination be denied, uphold the denial of the request for termination when he indicated that what it actually was was a request that the extension be denied. I'm going to ask to read his prayer for relief. And I think there may have been some confusion on when I heard that question, but they had filed a petition to terminate. I think they might have even filed an amended and then dismissed it without prejudice so that we could proceed with the appeal. So I didn't read their prayer for relief on their response to answer that question. But to the extent that the court denied their termination or denied their argument to terminate, we would ask that you hold that. But to the extent that we affirm the trial court's decision extending maintenance, it would implicitly contradict or establish that his request was in fact denied. That's correct. I agree with that. Okay. Any other questions for me? Any other questions? No. No, thank you. We have other cases on the call. There will be a short recess.